UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
UNITED STATES OF AMERICA,

                                     01 Cr. 156 (RPP)

                    Plaintiff-Respondent,

                                   **OPINION & ORDER**

GREGG BECKER,

                    Defendant-Petitioner.
----------------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J**.

        The Petitioner, Gregg Becker ("Becker"), presently subject to a sentence imposed

by this Court, seeks relief pursuant to 28 U.S.C. § 2255 from his earlier conviction for

securities fraud.  For the reasons set forth below, the petition is denied in part but further

briefing is requested on one issue.

**BACKGROUND**

        On February 3, 2002, the Government filed Superseding Indictment S3 01 Cr. 156

(RPP), which contained five counts, two of which implicated Petitioner.  Count One

charged Petitioner with unlawful involvement in a conspiracy to commit: (a) securities

fraud in violation of 15 U.S.C. §§ 78j(b) and 78ff, and 17 C.F.R. § 240.10b-5; (b) mail

fraud in violation of 18 U.S.C. § 1341; and (c) wire fraud in violation of 18 U.S.C. §

1343.  (Superseding Indictment S3 01 Cr. 156 (RPP) at 1-29.)  Count Two charged

Petitioner with securities fraud in violation of 15 U.S.C. § 78j(b) and 78ff; 17 C.F.R. §

240.10b-5; and 18 U.S.C. § 2.  (Id. at 30-31.)

        Petitioner's trial began on June 3, 2002, and ended on July 1, 2002, when a jury

convicted him of (1) conspiracy to commit securities fraud, mail fraud, and wire fraud;

and (2) commission of securities fraud.  (Trial Tr. at 3596-3601.)  On February 20, 2003,

Petitioner was sentenced to twenty-four months imprisonment, followed by three years

supervised release; a $200 special assessment; and restitution in the amount of $386,338.

(Sentencing Tr. at 54-55.)

Petitioner appealed his conviction to the Second Circuit, which affirmed his

conviction by summary order on October 31, 2003.  United States v. Alvarado (Becker), ,

No. 03-1117, 84 F.App'x 162 (2d Cir. October 31, 2003.)  Petitioner filed a petition for

rehearing with a suggestion for rehearing en banc, which was denied on December 19,

2003.  Petitioner did not file a petition for a writ of certiorari to the Supreme Court.

(Third Am. Pet. for Writ of Habeas Corpus ("Third Am. Pet."), dated Feb. 14, 2005, filed

Mar. 7, 2005, at 2.)  On February 27, 2004, Petitioner filed the present 28 U.S.C. § 2255

motion, and has amended his petition three times, on May 24, 2004, August 10, 2004,

and February 14, 2005.

Petitioner raises several claims in his oft-amended petition for a writ of habeas

corpus.  In his original motion for relief pursuant to 28 U.S.C. § 2255, which was filed by

his habeas attorney, Petitioner argues that he received ineffective assistance of counsel in

violation of the Sixth Amendment, when trial counsel failed to argue on appeal that the

jury did not follow the law.  (Mot. for Relief Pursuant to 28 U.S.C. § 2255 ("Pet."), dated

Feb. 27, 2004, at 1.)

In his First Amended Petition for Writ of Habeas Corpus, also filed by his habeas

attorney, Petitioner invokes the Supreme Court's decision in Crawford v. Washington,

541 U.S. 36 (2004), and challenges the admission of the plea allocutions of his co-

conspirators, thereby denying him opportunity to cross-examine them. (First Am. Pet., dated May 24, 2004, at 1-5.)

The Second Amended Petition for Writ of Habeas Corpus relies on <u>Blakely v. Washington</u>, 542 U.S. 296 (2004), and argues that Petitioner's sentence was improperly enhanced beyond the statutory maximum as a result of judicially-determined facts not presented to the jury for a finding beyond a reasonable doubt. (Second Am. Pet., dated Aug. 5, 2004, at 17-18.)

Finally, in his Third Amended Petition for Writ of Habeas Corpus, Petitioner, proceeding <u>pro</u> <u>se</u>, appears to raise three new and distinct ineffective assistance of counsel claims. The first relates to his counsel's untimely filing of a Rule 29 motion, and her failure to challenge her own allegedly deficient performance on appeal. (Third Am. Pet. at 4-5.) Petitioner also asserts that he received "ineffective assistance of appellate counsel wherein counsel failed to advise him of his right to file a petition for certiorari in the Supreme Court." (<u>Id.</u> at 3.) It is unclear from this statement and from his subsequent argument whether Petitioner is arguing that his counsel was ineffective on appeal for failing to notify him of his right to proceed <u>pro</u> <u>se</u> by filing a petition for a writ of certiorari, or if he challenges counsel's decision to dissuade Petitioner from directing counsel to petition for a writ of certiorari. Because "the pleadings of a <u>pro</u> <u>se</u> plaintiff must be read liberally and should be interpreted 'to raise the strongest arguments that they suggest,'" this Court will consider both of these interpretations. <u>Graham v.</u>

Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).[1]

**DISCUSSION**

**A. Ineffective Assistance of Counsel Claims**

1. **Petitioner fails to show prejudice with respect to his claim for ineffective assistance of counsel, when counsel filed an untimely Rule 29 motion**

In his Third Amended Petition, Petitioner claims, inter alia, that he was denied effective assistance of trial counsel when counsel filed an untimely motion for a judgment of acquittal. (Third Am. Pet. at 1.)

Following the jury's guilty verdict, Petitioner's trial counsel requested an additional three weeks of time for filing post-trial motions because of the complexity of the case. (Trial Tr. at 3618.) This Court granted her request, setting a deadline of July 22, 2002. (Id.) Petitioner's counsel did not, however, meet this deadline, and the Rule 29 motion that was submitted was dated August 12, 2002.[2]

This Court entertained oral arguments on the motion on October 2, 2002, during which this Court questioned counsel on her failure to meet the deadline. Counsel conceded that she had not asked for an additional extension (October 2, 2002 Tr. at 18), but argued that she "did not feel that this court would feel that that kind of procedural

---

[1] In its letter in opposition to Petitioner's Third Amended Petition, the Government interprets Petitioner's claims in a similar manner and briefs the Court on both of these issues. (Gov't Letter, dated May 18, 2005, at 3-4.)

[2] In his Third Amended Petition, Petitioner refers to a Rule 33 motion, however he recognizes he may be mistaken, stating, "Petitioner recalls the motion being a Judgment of Acquittal, however also recalls the government responding to the motion as a Rule 33 motion for new trial, Petitioner requests the Court make the adjustment as necessary. (Third. Am. Pet. at 1, n 1.) Petitioner is clearly referring to his "Motion of Gregg Becker for Judgment of Acquittal," dated August 12, 2002, which was treated as a Rule 29 motion in argument before this court, and dismissed as untimely. (October 2, 2002 Tr. at 54.) Rule 33 has a similar timing requirement: "Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 7 days after the verdict or finding of guilty, or within such further time as the court sets during the 7-day period." (Fed. R. Crim. P. 33.)

issue was significant given the gravity of what we are talking about." (Id. at 20). This Court denied the motion for lack of timeliness, citing Carlisle v. United States, 517 U.S. 416 (1996),[3] as controlling authority. (October 2, 2002 Tr. at 54.)

To bring a successful claim for ineffective assistance of counsel, a petitioner must show both (1) that his counsel's performance was deficient and (2) that his counsel's deficient performance prejudiced the petitioner. See Strickland v. Washington, 466 U.S. 668, 687 (1984). To establish deficiency, a petitioner must show that his attorney's performance "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688.

Rule 29(c) of the Federal Rules of Criminal Procedure provides that: "If the jury returns a verdict of guilty or is discharged without having returned a verdict, a motion for judgment of acquittal may be made or renewed within 7 days after the jury is discharged or within such further time as the court may fix during the 7-day period." Fed. R. Crim. P. 29.[4] In failing to adhere to the deadline imposed by this Court, Petitioner's counsel clearly violated the timing requirements of Rule 29 as construed by the Supreme Court in Carlisle, thereby precluding this Court from reaching the merits of the motion. The Carlisle Court made clear that neither Rule 2 of the Federal Rules of Criminal Procedure, nor a district court's "inherent supervisory power," nor any other source enables a district court to disregard the timing provisions of Rule 29. Carlisle, 517 U.S. at 424-26.

---

[3] The Carlisle Court held that "[t]here is simply no room in the text of Rules 29 and 45(b) for the granting of an untimely postverdict motion for judgment of acquittal, regardless of whether the motion is accompanied by a claim of legal innocence, is filed before sentencing, or was filed late because of attorney error." 517 U.S. at 421.

[4] This language is taken from the version of Rule 29 that was in effect in the summer of 2002, which is when the trial and motion took place. Effective December 1, 2002, Rule 29(c) was changed for stylistic and substantive purposes, but not in any way that is relevant to the present case. See Fed. R. Crim. P. 29 advisory committee's note (The change in Rule 29(c) "reflects the fact that in a capital case or in a case involving criminal forfeiture, for example, the jury may not be discharged until it has completed its sentencing duties.")

This Court need not decide, however, whether counsel's performance was deficient, because Petitioner has failed to satisfy the prejudice prong of Strickland. See Strickland, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."); see also Phillips v. United States, No. 97 Civ. 2571, 2001 U.S. Dist. LEXIS 2905, at *9-*10 (S.D.N.Y. 2001) (denying claim of ineffective assistance of counsel when counsel filed untimely Rule 29 motion because the petitioner was unable to demonstrate prejudice). To demonstrate prejudice, Petitioner must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Because each of the claims set forth in Petitioner's memorandum of law in support of his motion for judgment of acquittal (Motion for Acquittal) were presented to, and rejected by, the Second Circuit on direct appeal, it cannot be said that the dismissal of the untimely Rule 29 motion "undermine[s] confidence in the outcome" of Petitioner's trial. (Id. at 694.)

In his memorandum of law in support of his untimely Rule 29 motion, Petitioner first argues that "there exists no authority for the proposition that . . . a misstatement as to one's background or experience . . . constitutes a material and actionable misrepresentation under the securities fraud or mail fraud statutes." (Mem. of Law in Supp. of Mot. of Gregg Becker for J. of Acquittal ("Mot. for Acquittal") at 6.) This Court never addressed the issue on the merits, and Petitioner reargued the point to the Second Circuit in a brief that provided a more thorough presentation of the issue than the original memorandum of law in support of the Rule 29 motion.[5] (Compare id. at 6-13

_____

[5] Parts of the brief to the Second Circuit were lifted in whole from the original memorandum of law in support of the Rule 29 motion.

with Br. on Behalf of Appellant Gregg Becker at 18-21, <u>United States v. Alvarado</u>

<u>(Becker)</u>, No. 03-1117, (2d Cir. October 31, 2003.)  The Second Circuit explicitly

acknowledged[6] and rejected[7] this claim in its summary order.  The Second Circuit

reviews questions of law, such as this one, <u>de novo</u>, and therefore Petitioner suffered no

prejudice in having the Second Circuit decide this issue instead of the District Court.  <u>See</u>

<u>United States v. Selioutsky</u>, 409 F.3d 114, 119 (2d Cir. 2004) ("We review issues of law

<u>de novo</u>, issues of fact under the clearly erroneous standard, mixed questions of law and

fact either <u>de novo</u> or under the clearly erroneous standard depending on whether the

question is predominantly legal or factual, and exercises of discretion for abuse of

discretion." (citations omitted)).

Embedded in Petitioner's Motion for Acquittal is also an assertion that Second

Circuit law provided that the "'in connection with' requirement under the securities laws,

has consistently confirmed that a misrepresentation, although involved in a securities

transaction, is actionable only where it concerns the value of the security being purchased

or sold."  (Mot. for Acquittal at 9.)[8]  On appeal, this "in connection with" argument was

laid out in a distinct section of the brief.  (Brief on Behalf of Appellant Gregg Becker

("Becker Brief") at 21-27, <u>United States v. Alvarado (Becker)</u>, No. 03-1117 (2d Cir.

2003).)  The Second Circuit disagreed with Petitioner's interpretation of the law, holding

that "Becker's reading of the 'in connection with' language of the securities fraud statute,

however, was rejected by the Supreme Court . . . ."  <u>United States v. Alvarado (Becker)</u>,

---

[6] "[Becker] contends that his misrepresentations about his background and experience were not illegal because they were not material." <u>United States v. Alvarado (Becker)</u>, No. 03-1117, summary order at 3 (2d Cir. Oct. 31, 2003).

[7] "An investment advisor's representations about his background and experience constitute information material to a reasonable investor." (<u>Id</u>.), citing <u>Marbury Management, Inc. v. Kohn</u>, 629 F.2d 705, 707 (2d Cir. 1980).

[8] The "in connection with" language appears in 15 U.S.C.A. § 78j(b) and 17 CFR § 240.10b-5.

No. 03-1117, summary order at 3 (2d Cir. 2003, Oct. 31, 2003), citing SEC v. Zandford, 535 U.S. 813, 820 (2002).  Again, this was a legal issue involving statutory interpretation and therefore Petitioner suffered no prejudice in losing the opportunity to have this claim reviewed by the District Court.  See Perry v. Dowling, 95 F.3d 231, 235 (2d Cir. 1996) ("[B]ecause the district court's disposition 'presents only a legal issue of statutory interpretation . . . [w]e review de novo whether the district court correctly interpreted the statute.'") (quoting White v. Shalala, 7 F.3d 296, 299 (2d Cir. 1993).)

Petitioner also argued in his Motion for Acquittal that the Government had not presented sufficient evidence to establish that Petitioner had "engaged in material misrepresentations going to the nature of the securities or to their characteristics or attributes" with respect to certain securities.  (Mot. for Acquittal at 12 (internal quotation marks omitted).)  Additionally, Petitioner challenged the sufficiency of the evidence offered for proving that Petitioner possessed the requisite intent required to support a conviction for securities fraud (id. at 13-15) or a conviction for conspiracy to commit securities, mail or wire fraud (id. at 16-17).  Again, each of these arguments reappears in substantially similar form and phrasing in Petitioner's brief to the Second Circuit. (Compare Mot. for Acquittal at 12-17 with Becker Brief at 28-29, 33-36, United States v. Alvarado (Becker), No. 03-1117 (2d Cir. 2003).)  The Second Circuit rejected all of these claims.  United States v. Alvarado (Becker), No. 03-1117, summary order at 3-5 (2d Cir. 2003).

In reviewing these last three claims, the Second Circuit articulated the standard it uses when ruling on claims of insufficiency of evidence.  "In reviewing challenges to the sufficiency of evidence, we are required to view the evidence in the most light [sic]

8

favorable to the government and to credit the inferences that could have been drawn in its favor." United States v. Alvarado (Becker), No. 03-1117, summary order at 3 (2d Cir. 2003). This is the same standard that a district court uses in reviewing a motion for a judgment of acquittal. See, e.g., United States v. Stewart, 305 F. Supp. 2d 368, 375 (S.D.N.Y. 2004); United States v. Martinez, 54 F.3d 1040, 1042 (2d Cir. 1995)(" the evidence [must] be viewed in the light most favorable to the government and all permissible inferences drawn in its favor . . . .") Thus, there was no detriment to Petitioner's insufficiency of evidence claims when they were presented to the Second Circuit on direct appeal instead of to the District Court in a motion for a judgment of acquittal.

Because Petitioner can show no prejudice resulting from his counsel's filing of the untimely Rule 29 motion, Petitioner cannot succeed on any of his ineffective assistance of trial counsel claims.

**2. Petitioner's ineffective of assistance of counsel claims regarding his opportunity to file for a Writ of Certiorari to the United States Supreme Court fail because Petitioner has no right to effective assistance of appellate counsel on discretionary review**

Generally, the Constitution guarantees criminal defendants a right to effective assistance of counsel. At trial, this right is guaranteed by the Sixth Amendment. Strickland v. Washington, 466 U.S. 668, 685 (1984). On direct appeal in state criminal proceedings, the Supreme Court has held that the Due Process Clause of the Fourteenth Amendment comprehends this right. Evitts v. Lucey, 469 U.S. 387, 396 (1985). The Second Circuit has extended that guarantee to defendants whose criminal cases originate

in federal courts.[9]  E.g., <u>Frederick v. Warden</u>, 308 F.3d 192, 197 (2d Cir. 2002); <u>McHale</u>

<u>v. United States</u>, 175 F.3d 115 (2d Cir. 1999).

In the present case, Petitioner alleges ineffective assistance of counsel arising

from his counsel's failure to assist him with a petition for a writ of certiorari to the United

States Supreme Court, both because counsel discouraged him from insisting that counsel

file a petition in the Supreme Court and because counsel failed to advise him of his right

to proceed <u>pro</u> <u>se</u> by filing a petition for a writ of certiorari.

Although <u>Strickland</u> and <u>Evitts</u> recognize a right to effective assistance of

counsel, the right is not extant where the defendant lacks a predicate right to counsel.

<u>Evitts</u>, 469 U.S. at 396 n.7 ("Of course, the right to effective assistance of counsel is

dependent on the right to counsel itself."); <u>Wainwright v. Torna</u>, 455 U.S. 586, 587-588

(1982) (<u>per</u> <u>curiam</u>)("Since respondent had no constitutional right to counsel, he could

not be deprived of the effective assistance of counsel by his retained counsel's failure to

file the application timely.")  Petitioner, then, must first establish that he had a right to

counsel following the denial of his appeal by the Second Circuit in order to succeed on

either of these ineffective assistance of counsel claims.

Indigent defendants challenging their criminal convictions have a right to state-

appointed counsel on their "<u>first appeal</u>, granted as a matter of right."  <u>Douglas v.</u>

<u>California</u>, 372 U.S. 353, 356 (1963) (emphasis in original).  As the <u>Douglas</u> Court's

---

[9] The source of the right to effective assistance of appellate counsel for federal criminal defendants is less clear than that for state criminal defendants.  <u>Compare</u> <u>Martinez v. Court of Appeal</u>, 528 U.S. 152, 160-161 (2000) (holding that the Sixth Amendment does not apply to appellate proceedings), <u>and</u> <u>United States v. Cross</u>, 308 F.3d 308, 315 n.11 (3d Cir. 2002) (explaining that the Fifth Amendment's Due Process Clause provides a guarantee of effective assistance of appellate counsel), <u>and</u> <u>United States v. Baker</u>, 256 F.3d 855, 859-60 & n.2 (9th Cir. 2001) (same), <u>with</u> <u>McHale v. United States</u>, 175 F.3d 115, 119 (2d Cir. 1998) (holding that appellate counsel's failure to perfect a filed appeal constitutes a Sixth Amendment violation).  For present purposes, the conflict is irrelevant since Petitioner cannot avail himself of the right regardless of its constitutional source.

emphasis suggests, the right to appointed counsel is not unbounded, and the right was later expressly limited in Ross v. Moffitt, 417 U.S. 600 (1974). The Ross Court drew a distinction between discretionary appeals and first appeals as of right, holding that neither the Equal Protection Clause nor Due Process Clause of the Fourteenth Amendment guaranteed indigents state-appointed counsel for discretionary state appeals or applications to the United States Supreme Court. (Id. at 609-19.)

The Supreme Court exercises discretionary review over petitions for writs of certiorari. See Sup. Ct. R. 10 ("Review on a writ of certiorari is not a matter of right, but of judicial discretion"). Because of the discretionary nature of the Supreme Court's jurisdiction, there is no right to counsel in seeking a writ of certiorari, and the Supreme Court "has followed a consistent policy of denying applications for appointment of counsel by persons seeking to file jurisdictional statements or petitions for certiorari in this Court." Ross, 417 U.S. at 617. Because Petitioner had no right to counsel on his would-be petition for a writ of certiorari, he cannot claim ineffective assistance of counsel arising from counsel's allegedly deficient performance following Petitioner's unsuccessful appeal to the Second Circuit.

Indeed, Petitioner's case is logically indistinguishable from prior cases that deny ineffective assistance of counsel claims arising out of attorney performance on discretionary review. [10] In Wainwright v. Torna, the Supreme Court rejected an

---

[10] The Supreme Court's recent decision in Halbert v. Michigan reveals that the right-to-counsel issue is more complex than a simple distinction between discretionary appeals and appeals as of right. 125 S. Ct. 2582 (2005). It is doubtful, though, that Halbert provides support for a right to counsel and a right to effective assistance of counsel while seeking discretionary review to the United States Supreme Court. See Hernandez v. Greiner, 414 F.3d 266, 270 (2d Cir. 2005) (In light of the Halbert Court's reasoning, "the existence of a constitutional right to counsel on a second-level appeal is in doubt."). To the extent that Halbert does provide support for the existence of a right to counsel while seeking a writ of certiorari, it would be a "new rule" within the Teague v. Lane line of cases and inapplicable to cases, like Becker's, that became final before Halbert was decided. See Teague, 489 U.S. 288 (1989); Beard v. Banks, 542 U.S. 406,

11

ineffective assistance of counsel claim where the individual's counsel had failed to timely file an application for a writ of certiorari to the Florida Supreme Court because the individual "had no absolute right to appeal his convictions to the Florida Supreme Court" and thus no right to counsel. 455 U.S. 586, 587-588 (1982) (per curiam). The core holding of Wainwright – that there is no right to effective assistance of counsel on discretionary review because there is no underlying right to counsel – has been repeatedly followed by lower courts. See, e.g., Chalk v. Kuhlman, 311 F.3d 525, 528-529 (2d Cir. 2002); Anderson v. Cowan, 227 F.3d 893, 901 (7th Cir. 2000).

For these reasons, Petitioner's claims alleging ineffective assistance of counsel arising from counsel's failure to file a petition for a writ of certiorari, and for failure to advise Petitioner of his right to petition for a writ of certiorari pro se, are rejected.

### 3. Petitioner's counsel was not ineffective for failing to argue that the jury did not follow the law

In his first Petition, Becker claims that he received ineffective assistance of appellate counsel in violation of his Fifth and Sixth Amendment rights. (Pet. at 9.) The thrust of this claim is that Becker's appellate counsel was ineffective for failing to argue that the jury did not follow the law and found him guilty simply because his co-defendants were guilty, when appellate counsel was in possession of jury letters that allegedly demonstrate that "[t]he jury did not recognize that they were obligated to decide Gregg Becker's guilt independently from his two co-defendants." (Id. at 12-13.)

---

411-12 (2004); cf. Hernandez, 414 F.3d at 271 (holding that "requiring counsel on a second-level discretionary appeal after permission to take such an appeal has been granted would be a 'new rule' within the meaning of Teague."). Because Petitioner's conviction became final on March 18, 2004, he cannot avail himself of any new rules announced in Halbert.

First, such statements by jurors explaining the reasoning for their verdict may not

be considered at all in the resolution of any issues relating to this case.  See Rule 606(b)

of the Federal Rules of Evidence.  Rule 606(b) reads as follows:

> Upon an inquiry into the validity of a verdict or indictment, a juror may
> not testify as to any matter or statement occurring during the course of the
> jury's deliberations or to the effect of anything upon that or any other
> juror's mind or emotions as influencing the juror to assent to or dissent
> from the verdict or indictment or concerning the juror's mental processes
> in connection therewith, except that a juror may testify on the question
> whether extraneous prejudicial information was improperly brought to the
> jury's attention or whether any outside influence was improperly brought
> to bear upon any juror.  Nor may a juror's affidavit or evidence of any
> statement by the juror concerning a matter about which the juror would be
> precluded from testifying be received for these purposes.

(Id.)

Even if the jurors' letters could be considered, the letters relied on by Becker,

which are attached to the petition as Exhibits A-C, do not support his claim.  (Pet., Ex. A-

C.)  The following language is excerpted from the letters:

> [Becker's] convictions were based on the background of lies he told about
> himself, while the other defendants' convictions were based on that and a
> host of other overt acts."

(Pet., Ex. A.)

> Since I believed the witness to be telling the truth about that fact, I decided
> to convict Greg Becker. . . .  All the other witnesses brought to testify
> against Mr. Becker did not present any evidence supporting the
> prosecutions [sic] case against Mr. Becker.

(Pet., Ex. B.)

> I am in full agreement with my fellow jurors that Mr. Becker participated
> in a conspiracy at Investor's Associates by knowing misrepresenting his
> background and experience to his clients. . . .  However, I do feel that
> based on the tapes and testimony we heard during the trial, there was a
> distinct and measurable difference between Mr. Becker's demeanor and
> relationship with his clients - compared to the other two defendants.

(Pet., Ex. C.)  All three of these letters offered in Becker's petition suggest that these jurors did in fact find Becker guilty, and that they were able to distinguish between him and the other defendants.

Lastly, Becker's appellate counsel used the letters to make a stronger argument on appeal, namely that background and experience misrepresentations, which the jurors' letters show they relied on, could not form the basis of a conspiracy charge.  (Becker Brief at 18-27.)

The right to effective assistance of appellate counsel does not include the right to a presentation of every nonfrivolous claim.  In fact, the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy."  Smith v. Murray, 477 U.S. 527, 536 (1986) (quoting Jones v. Barnes, 436 U.S. 745, 751-52 (1983)).  "The court 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' bearing in mind that 'there are countless ways to provide effective assistance in any given case' and that 'even the best criminal defense attorneys would not defend a particular client in the same way.'"  United States v. Aguirre, 912 F.2d 555, 560 (2d Cir. 1990) (quoting Strickland, 466 U.S. at 689).

Becker's argument that his counsel on appeal failed to provide effective counsel by not arguing that the jurors' letters show that they did not follow the law and determine his guilt independently is unsupportable by the evidence he offers.  This claim of ineffective representation by appellate counsel is denied.

**B. Petitioner's <u>Blakely</u> claim fails because <u>Blakely</u> and <u>United States v. Booker</u> do not apply retroactively to cases on collateral review**

In his Second Amended Petition, Petitioner, citing <u>Blakely v. Washington</u>, 542 U.S. 296 (2004), claims that his Sixth Amendment right to a jury was violated when this Court enhanced his sentence by thirteen points, pursuant to the Federal Sentencing Guidelines, because the relevant criteria for determining the enhancements "were never argued before the jury for a determination during the trial."  (Second Am. Pet. at 17.)

<u>Blakely</u> involved a challenge to a state sentencing scheme.  Petitioner's claim more appropriately falls within the Supreme Court's decision in <u>United States v. Booker</u>, which declared that "our holding in <u>Blakely</u> applies to the [Federal] Sentencing Guidelines," 125 S. Ct. 738, 755 (2005).[11]  In <u>Booker</u>, the Court concluded that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt."  (<u>Id</u>. at 756.)

The Second Circuit has stated unequivocally that "<u>Booker</u> is not retroactive, i.e., it does not apply to cases on collateral review where the defendant's conviction was final as of January 12, 2005, the date that <u>Booker</u> issued."  <u>Guzman v. United States</u>, 404 F.3d 139, 144 (2005).  Because Petitioner's conviction became final on March 18, 2004 (<u>see</u>, <u>infra</u>, p.17), before either <u>Blakely</u> or <u>Booker</u> was decided, he cannot rely on the holdings of those cases to attack his sentence in a § 2255 motion.

**C. Petitioner's <u>Crawford</u> claim**

---

[11] Petitioner's Second Amended Petition was filed before <u>Booker</u> was decided.  A day after the <u>Booker</u> decision was handed down, though, Petitioner applied for an immediate bail hearing.  (Letter from David Jude Januzzi, dated Jan. 13, 2005.)  This Court denied the application because "<u>Booker</u> is only applicable to cases 'pending on direct review or not yet final.'"  (Mem. Endorsement dated Jan. 14, 2005 (quoting <u>Booker</u>, 125 S. Ct. at 769 (quoting <u>Griffith v. Kentucky</u>, 479 U.S. 314, 328 (1987))).)

Petitioner also alleges a violation of the Sixth Amendment because the prosecution read into evidence the plea allocutions of Petitioner's co-conspirators who were unavailable for cross-examination. (First Am. Pet. at 15.) Petitioner argues that admission of the allocutions at trial without an opportunity for a meaningful cross-examination violates the Confrontation Clause of the Sixth Amendment as construed by the Supreme Court in Crawford v. Washington, 541 U.S. 36 (2004). (First Am. Pet. at 15.)

The Government argues that Crawford, decided March 8, 2004, announced a new rule of criminal procedure and, therefore, that it does not apply retroactively to Becker's habeas petition on collateral review because Becker's conviction became final before Crawford was decided.[12] (Gov't Letter of July 15, 2004, at 3-7.) The date the government is using to calculate the finality of Becker's conviction is based on the Second Circuit's decision denying Becker's appeal on October 31, 2003. (Id., at n. 4.)

In Teague, the Supreme Court recognized that for the purposes of a retroactivity analysis, "final" means "a case 'where the judgment of conviction was rendered, the availability of appeal exhausted, and the time for petition for certiorari had elapsed' . . . ." 489 U.S. 288, 295 (1989) (quoting Allen v. Hardy, 478 U.S. 255, 258, n. 1 (1986). Rule 13.1[13] of the Supreme Court provides that the time for filing a petition for a writ of

---

[12] The Second Circuit has decided the question of retroactivity, holding that "Crawford should not be applied retroactively on collateral review." Mungo v. Duncan, 393 F.3d 327, 336 (2d Cir. 2004), cert. denied 125 S. Ct. 1936 (2005).

[13] Rule 13.1 provides:

Unless otherwise provided by law, a petition for a writ of certiorari to review a judgment in any case, civil or criminal, entered by a state court of last resort or a United States court of appeals (including the United States Court of Appeals for the Armed Forces) is timely when it is filed with the Clerk of this Court within 90 days after entry of the judgment. A petition for a writ of certiorari seeking review of a judgment of a lower state court that is subject to discretionary review by the state court of last resort is timely when

certiorari does not expire until 90 days after the entry of judgment of the Court of Appeals. Therefore Becker's conviction would become final 90 days after the entry of judgment on his appeal by the Court of Appeals.

In the present case, the 90-day count begins on December 19, 2003 – the date on which the Second Circuit denied Becker's petition for rehearing with a suggestion for rehearing en banc. See Sup. Ct. R. 13.3 ("[I]f a petition for rehearing is timely filed in the lower court by any party . . . the time to file the petition for a writ of certiorari for all parties . . . runs from the date of the denial of rehearing . . . ."); Pet. for Cert. at 2, Mitchell v. Stumpf, No. 04-637, 2004 WL 2569701 (November 8, 2004) (asserting that the Supreme Court had proper jurisdiction where the petition for a writ of certiorari was filed within 90 days of the Court of Appeal's denial of a petition for rehearing), cert. granted 125 S. Ct. 824 (2005); Pet. for Writ of Cert. at 2, Hamdi v. Rumsfeld, No. 03-6696, 2003 WL 23170355 (October 1, 2003) (same), cert granted 540 U.S. 1099 (2004). Thus, Petitioner's conviction did not become final until March 18, 2004, ten days after Crawford was decided,[14] and therefore Crawford applies to his case.

The Second Circuit has observed that "Crawford departs from prior Confrontation Clause jurisprudence by establishing a per se bar on the admission of out-of-court testimonial statements made by unavailable declarants where there was no prior opportunity for cross-examination." United States v. McClain, 377 F.3d 219, 221 (2d Cir. 2004). The Second Circuit further held that "a plea allocution by a co-conspirator who does not testify at trial may not be introduced as substantive evidence against a defendant

---

it is filed with the Clerk within 90 days after entry of the order denying discretionary review.

[14] Crawford was decided on March 8, 2004.

17

unless the co-conspirator is unavailable and there has been a prior opportunity for cross-examination." 377 F.3d at 222.

During the course of Petitioner's trial, the Government read into evidence portions of the plea allocutions of a number of stockbroker defendants who had worked in the company at which Petitioner was employed (Trial Tr. at 720-752), over objections by trial counsel (see, e.g., Trial Tr. at 484).[15] The Court instructed the jury that the portions of the plea allocution were admitted in evidence for a limited purpose, stating:

> You are allowed to consider each of these transcripts as proof that a
> conspiracy existed as charged in the indictment, but not to show that any
> defendant here was a member of that conspiracy.
> You can consider these allocutions only for the followng two issues: (1)
> there was a conspiracy or a scheme to commit securities fraud, mail fraud,
> or wire fraud; (2) what, if anything, each of the persons' testimonies
> you're about to hear did to further the object of the conspiracy, if you do
> find that a conspiracy existed.

(Trial Tr. at 719.)[16] The reading of these portions of the plea allocutions comprised over thirty pages of the 3,600-page trial transcript (Trial Tr. at 720-52), and the prosecution re-read aloud from two of the allocutions during summation. (Trial Tr. at 3015-17). In light of Crawford, Petitioner's Sixth Amendment right "to be confronted with the witnesses against him" was violated by this Court's admission of the plea allocutions.

---

[15] Prior to Crawford, the admission of plea allocutions of co-conspirators was understood to be a constitutionally permissible practice. See United States v. Alvarado (Becker), No. 03-1117, summary order at 5 (2d Cir. Oct. 31, 2003) ("It is well settled that plea allocutions of unavailable co-conspirators are admissible at trial as statements against interest pursuant to [Federal Rule of Evidence] 804(b)(3) to prove the existence and scope of a conspiracy.")

[16] During the Jury Charge at the end of the trial, the Court again charged the jury:
  You may consider evidence that other people pleaded guilty to these crimes as evidence that a conspiracy existed at Investors Associates and as evidence that an individual whose guilty plea is in evidence personally engaged in the conduct that he specifically admitted as part of his guilty plea. You may not consider the guilty pleas of others as evidence that any of the defendants were members of the alleged conspiracy.
(Trial Tr. at 3290.)

18

There remains, however, the question of whether such error was harmless. See McClain, 377 F.3d at 222 ("It is well established that violations of the Confrontation Clause, if preserved for appellate review, are subject to harmless error review, . . . and Crawford does not suggest otherwise."); see also Kamara v United States, No. 04CIV5340, 2005 WL 1490107, at *1 (S.D.N.Y. June 22, 2005) (holding that Petitioner's Crawford claim in his § 2255 habeas petition was not barred because Crawford was decided before Petitioner's conviction became final but finding "no basis for reconsidering its holding that any error arising from the admission of Petitioner's co-defendant's plea allocution was harmless").[17]

Because of the amount of time that has elapsed since trial, the Court is unable to make this determination without briefing on the significance of the plea allocutions in light of the other evidence admitted at trial. Accordingly, the parties are to file briefs on the issue of harmless error by December 19, 2005.

IT IS SO ORDERED.

Dated: New York, New York
November 18, 2005

Robert P. Patterson, Jr.
U.S.D.J.

---

[17] The Crawford claim has not been procedurally defaulted by Petitioner, who objected to the admission of the allocutions before trial (see Letter from Maranda E. Fritz, dated May 31, 2002), and on appeal before the Second Circuit (see Br. on Behalf of Appellant Gregg Becker at 37-38, United States v. Alvarado (Becker), No. 03-1117 (2d Cir. 2003)). In any event, the Government does not argue that Petitioner has procedurally defaulted his Crawford claim. (See Gov't Letter dated July 15, 2004, at 2) ("This claim has already been litigated on direct appeal"). Therefore, this Court need not consider the issue. See United States v. Canady, 126 F.3d 352, 359-60 (2d Cir. 1997)(finding that because "the government did not raise this procedural default argument in the district court . . . the government has waived the defense"); Romero v. United States, No. 00Civ.3513, 2001 U.S. Dist. LEXIS 11747, at *20 n.8 (S.D.N.Y. Aug. 15, 2001) ("declin[ing] to apply a procedural default analysis and instead proceed[ing] with a harmless error analysis" because "the Government did not raise a procedural default objection in response to Petitioner's motion . . . .")

Copies of this Opinion and Order sent to:

Michael Garcia, United States Attorney
Southern District of New York
Attn: Josh Klein, A.U.S.A.
One St. Andrew's Plaza
New York, NY 10007
Tel:    212-637-2397
Fax:    212-637-2937

*Counsel for Defendant-Petitioner*
Law Office of David Jude Jannuzzi
Attn:  Dave Jude Jannuzzi, Esq.
775 Park Avenue, Suite 205
Huntington, NY 11743
Tel:    631 385 8183
Fax:    631 385 7664